LAWRENCE M. HADLEY - State Bar No. 157728
lhadley@glaserweil.com
ROBERT E. ALLEN - State Bar No. 166589
rallen@glaserweil.com
JASON C. LINGER - State Bar No. 323031
jlinger@glaserweil.com
**GLASER WEIL FINK HOWARD**
 **JORDAN & SHAPIRO LLP**
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
*Evox Productions, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DEALERSOCKET, INC., a Delaware corporation; DEALERSOCKET, LLC, a Delaware limited liability company; SOLERA HOLDINGS, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Evox Productions, LLC ("Evox"), by and through its undersigned attorneys, hereby brings the following Complaint for relief based on the following:

### Nature of the Action

1.     This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, for Defendants' willful infringement of almost six hundred thousand of Evox's copyrighted, professional, high-quality, and original photographs on Defendants' Website. The term "Copy" herein shall mean any of the exclusive rights under

Section 106, including to reproduce, prepare derivative works, distribute copies, and display publicly.

**Jurisdiction and Venue**

2.      This Court has exclusive original jurisdiction over this lawsuit under 28 U.S.C. §§ 1331 and 1338(a) because it arises under an Act of Congress relating to copyrights, specifically 17 U.S.C. §§ 101 *et seq*.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because (a) a substantial part of the events or omissions giving rise to Evox's claims occurred in this District; (b) Defendants injected the infringing materials into interstate commerce through their websites, knowing that the Websites were and are accessible in California and in the Central District of California; (c) on information and belief, Defendants cause their content delivery network to reproduce and publicly display Evox's Images from servers located in California, including in this District; (d) certain Defendants or their corporate affiliates are registered to do business in California and have designated an agent for service of process with the California Secretary of State; (e) the license agreements between Plaintiff and certain Defendants have choice of law provisions stating any suit must be brought in this District (see paragraph 21 below); and (f) each of Defendants has previously consented to jurisdiction in this District in multiple prior litigations.

**Parties**

4.      Plaintiff Evox is a Delaware limited liability company with its principal place of business at 13433 Benson Ave, Chino, California.

5.      On information and belief, Defendant DealerSocket, Inc. is a Delaware corporation, doing business nationwide including in this District, having its principal place of business in Westlake, Texas and offices throughout the United States, including in San Clemente, California.

6.      On information and belief, Defendant DealerSocket, LLC is a Delaware limited liability company, doing business nationwide including in this District, doing

3137787

business nationwide, having its principal place of business in Westlake, Texas and offices throughout the United States, including in San Clemente, California.

7.      On information and belief, Defendant Solera Holdings, LLC ("Solera") is a Delaware limited liability company, doing business nationwide including in this District, having its principal place of business in Westlake, Texas and offices throughout the United States, including in San Diego, California. On information and belief, Solera is the parent company of DealerSocket, Inc. and DealerSocket, LLC.

8.      DealerSocket, Inc. and DealerSocket, LLC are referred to herein, individually and collectively, as "DealerSocket."  DealerSocket, Inc., DealerSocket, LLC and Solera are referred to herein, individually and collectively, as "Defendants."

9.      There is such unity of interest and ownership between DealerSocket and Solera that the separate personalities of each of the business entities no longer exist. Specifically, on information and belief: (a) DealerSocket and Solera commingle funds and other assets, including their websites and servers; (b) there is identical equitable ownership of the two entities; (c) both entities use the same office (both entities list as the address of its executive office as 1500 Solana Blvd., Bldg. 6, Suite 6300, Westlake, Texas 76262) and employees (while Solera's website has a page listing the members of its leadership, DealerSocket's "Team" page does not list anyone, instead stating that "DealerSocket is part of Solera's Vehicle Solutions"); (d) DealerSocket's entire website is cobranded as "Solera / DealerSocket," with no differentiation between them of the services provided; (e) Solera uses DealerSocket as a mere shell and its conduit; and (f) DealerSocket is not adequately capitalized, given its business model inclusive of massive copyright infringement, as described below. Additionally, Solera refers to "DealerSocket" as not just a Solera company, but a branded "Solera solution" offering services and "benefits" under the Solera name.

10.      If the below acts of infringement are treated as those of DealerSocket alone, as a separate company, an inequitable result will follow.  Although Solera purports to act through DealerSocket in some respects and derives direct financial

1  benefit from the massive copyright infringements described below, DealerSocket, as a

2  company, is undercapitalized to address the liability for its copyright infringement,

3  even for the minimum statutory damages Evox is entitled to receive under the

4  Copyright Act for the infringement of 559,781 of Evox's Images.

5      11.     The true names and capacities, whether individual, corporate, associate

6  or otherwise, of "Unnamed Defendants" named herein as Does 1 through 10 are

7  unknown to Evox who therefore sues said Unnamed Defendants by such fictitious

8  names. Evox will amend this Complaint to allege their true names and capacities

9  when such have been ascertained. Upon information and belief, each of the Unnamed

10  Defendants is responsible in some manner for the occurrences herein alleged, and

11  Evox's injuries as herein alleged were proximately caused by such Unnamed

12  Defendants' acts or omissions.

13                              **RELEVANT FACTS.**

14      **Evox's Copyrighted Works**

15      12.     Evox is a 30-year-old company specializing in photo, video, and

16  interactive vehicle imagery. Evox was a pioneer in the development of a digital

17  automotive stock photography library representing all makes and models of US cars

18  since model year 2000, photographing in high resolution, with consistent lighting, and

19  from numerous angles on five separate purpose-built stages—setting a new standard

20  in car stock photography.

21      13.     To protect its investments, Evox strictly follows a systematic process for

22  the prompt registration of all new, original photographs with the US Copyright Office

23  (the "Images").  A copyright registration may include multiple photographs for a

24  particular car model.

25      14.     Evox's Images display information that identify Evox as the copyright

26  owner, including the text "© EVOX IMAGES." EVOX IMAGES is a federally

27  registered trademark of Evox (U.S. Registration No. 3649661).

28

3137787

15.    Evox's primary business is the licensing of its copyright-protected Images to other businesses, such as websites that provide information about or facilitate vehicle sales.

16.    Evox owns copyrights in nearly two million photographs and other works of cars. These include the copyrighted works that form the basis of this Complaint. Attached to this Complaint as **Exhibit A** is a spreadsheet that includes each of the 559,781 unique Evox Images that Evox is currently aware of that have been infringed by the Defendants and contains: (a) the Image number; (b) the applicable copyright registration number; (c) the title of the Image; (d) the URL of each of the Images as stored on DealerSocket's servers; and (e) Evox's filename.

**Defendants' Website.**

17.    On information and belief, Defendants are the successor to DealerTrack, Inc. ("DealerTrack"), and own and operate the www.eCarlist.com website (the "Website"). On information and belief, the landing page to the Website at some point became blank. However, all of the webpages publicly displaying Evox's Images remained active, stored on Defendants' servers, and accessible to members of the public through their respective, unique URLs.

18.    On information and belief, Defendants are involved in vehicle-lifecycle management, including vehicle, repair, performance and telematics information. DealerSocket describes eCarlist as providing "web-based inventory management, distribution, and marketing services to over 1,000 leading franchise and independent automotive dealerships nationwide. The company's comprehensive vehicle pricing analytics, online marketing, and custom dealer websites connect dealers to a growing audience of online vehicle shoppers."

19.    On information and belief, Solera acquired DealerSocket to "bridge the gap between vehicle and driver performance."  On information and belief, the corporate structure of Defendants is as follows:

3137787

1

2        Solera Holdings

3        DealerSocket, Inc.

4

5        www.ecarlist.com                    Dealerfire, Inc.
         (purchased from
6        DealerTrack, Inc.)

7

8        **Prior Licenses.**

9        20.    Evox entered into three licenses with DealerTrack, all of which solely

10   permitted DealerTrack to display a copy of licensed Images only as part of an

11   advertisement for the sale of a particular vehicle (sometimes referred to as "VIN-

12   Specific Advertising"). An example of VIN-Specific Advertising is provided below:



21.     The most recent license between Evox and DealerTrack terminated as of January 31, 2017 (the "Prior DealerTrack License").  A copy of the DealerTrack License is attached as **Exhibit B-1**. The parties agreed that "[t]he parties hereby submit to the jurisdiction of the state and federal courts located in Los Angeles County, California and agree that said courts have the sole and exclusive jurisdiction over any and all disputes and causes of action involving such party that arise out of or relate to the Agreement." DealerSocket notified Evox on August 27, 2015 that DealerTrack had assigned the Prior DealerTrack License to DealerSocket, who agreed to perform all of DealerTrack's obligations and assume all of DealerTrack's liabilities arising thereunder. A copy of that notice letter is attached as **Exhibit B-2**.  On December 12, 2016, DealerSocket notified Evox that DealerSocket was terminating the Prior DealerTrack License as of January 31, 2017. A copy of that termination letter is attached as **Exhibit B-3**. Paragraph 13.2(ii) of the Prior DealerTrack License provides that upon termination, DealerTrack (now DealerSocket) was required to delete and destroy all copies of Evox's photographic images from any of its computer systems, servers and/or files.[1]

22.     DealerSocket has alleged that it may have rights to the Images under a different license.  Evox also entered into a license agreement with Dealerfire, Inc. ("Dealerfire") on May 6, 2008, which agreement was amended twice, and permitted Dealerfire to display a copy of licensed Images only as part of VIN-Specific Advertising (the "Prior Dealerfire License").  A copy of the Dealerfire license and amendments one and two are attached as **Exhibit C-1**.  Dealerfire is another company

---

[1] "(ii) Licensee will return (or provide written notice of destruction as eVox may direct) the Licensed Materials and any modifications or derivatives thereof, any and all of eVox's confidential information and promotional and other materials relating to eVox or the Licensed Materials in Licensee's possession or control and permanently delete the Licensed Materials from its computer systems and all other electronic or digital media in Licensee's possession or control in which such Licensed Materials are stored in each case except to the extent necessary to retain and continue to use any Licensed Materials to perform Licensee's obligations under any Sublicenses then in effect at the time of such expiration or termination."

3137787

owned by DealerSocket and has no connection to DealerTrack, other than that both Dealerfire and DealerTrack are owned by DealerSocket.

23.     Certain disputes arose between Evox and Dealerfire, and the parties entered into a settlement and release agreement dated as of December 31, 2014. That settlement agreement provided that the parties would enter a third amendment to the Prior Dealerfire License, which, among other things, extended the term of the Prior Dealerfire License by sixty (60) months, commencing on December 1, 2014.  A copy of this third amendment is attached as **Exhibit C-2**.  On June 8, 2020, DealerSocket notified Evox that it was terminating the Prior Dealerfire License, effective November 30, 2020.  A copy of that termination letter is attached as **Exhibit C-3**. Paragraph 3 required Dealerfire to host the Images on secure servers (which it did not do), paragraph 6.4 required Dealerfire to protect the Images using an industry standard firewall to prevent unauthorized third-party access to the Images, and paragraph 12.2(ii) of the Prior Dealerfire License provides that upon termination, Dealerfire (now DealerSocket) was required to delete and destroy all copies of Evox's photographic images from any of its computer systems, servers and/or files.[2]

**Evox Discovers DealerSocket's Massive Infringement.**

24.     In September 2022, over five and a half years after the termination of the Prior DealerTrack License, Evox discovered that DealerSocket had reproduced onto its servers (s3.images1.ecarlist.com ("Server 1")) and displayed (and continued to display) publicly on the Website at least **132,923** distinct Images.

---

[2] "(ii) Licensee will ret Additionally, Solera refers to "DealerSocket" as not just a Solera company, but a branded "Solera solution" offering services and "benefits" under the Solera name. urn (or provide notice of destruction as eVox may direct) the Licensed Materials and any modifications or derivatives thereof, any and all of eVox's confidential information and promotional and other materials furnished to or received by Licensee, and delete the Licensed Materials received from eVox from its computer systems and all other electronic or digital media in which such Licensed Materials exist."

*Defendants Reproduced and Publicly Displayed Each of the Images.*

25.    Each of the infringed Images resided on eCarlist.com's servers and were freely accessible to the public for display and copying. Each of the infringed Images were accessible and displayed to the public by itself, separate from any VIN-Specific Advertising, through a pinpoint URL Website address. For example:



https://www.ecarlist.com/showroom/1256/vehicle/468366/2006-BMW-5-Series-M5?show=&store=1256&cond=10426

*Defendants Allowed Third Parties to Copy and Exploit The Images.*

26.    There are two ways a website instructs search engines not to crawl and index a website or specific pages of a website. The first is through a robots.txt file, which tells search engine crawlers which URLs the crawler can access. The second is through a noindex meta tag or HTTP response header, which is used to prevent indexing content by search engines that support the noindex rule, such as Google. When Googlebot, for example, crawls that page and extracts the tag or header, Google will drop that page entirely from Google Search results, regardless of whether other sites link to it.

27.    DealerSocket invited all third parties to copy and index the Images by permitted anyone to copy and index the entire Website. The robot.txt file is a

3137787

gatekeeper file on every website domain.  The robots.txt file instructs search and indexing engines on what materials may be accessed for indexing and copying.  For example, Kelly Blue Book's site, www.kbb.com's robots.txt file (www.kbb.com/robots.txt) disallows various services from indexing or copying anything on its site, allows one service (Adsbot-Google) to index and copy only files inclusive of "psid=" and further disallows any service from indexing or copying 26 different folders or file types.  A copy of Kelly Blue Book's robots.txt file as of October 21, 2025 is attached as **Exhibit D**.  In contrast, the Website's robots.txt file (https://www.ecarlist.com/robots.txt), accessed when preparing this brief, is completely blank.

28.    What this means is that any web crawler, such as Google, is given carte blanche access to the site to index and copy whatever it wants, without any restrictions, including the individual Images.  Consequently, each of the individual, unique and copyrighted Images was indexed into these search engines and available to anyone doing a search on the Internet.  This is tantamount to leaving one's front door wide open and inviting anyone to come in and take whatever they want.

29.    Although DealerSocket could have inserted the noindex field into the links to the individual Images, it did not do so, resulting in DealerSocket further enabling any search engine to crawl and index the individual Images. As a sophisticated company, and owner of many websites and other digital properties, DealerSocket was in a position to know what to do.  But because DealerSocket failed to instruct search engines not to index the individual Image URLs, anyone was able to easily locate the individual Images:

3137787

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    30.    As a direct result of this, Google (1) copied and reproduced each of the

22 Images on its website for use as a thumbnail for its search and (2) displayed publicly

23 each of the individual Images from a direct link to the Images as stored on

24 DealerSocket's servers for the Website, on the side-panel of a Google image search.

25    31.    As the result of DealerSocket not instructing parties like Google to not

26 index the URLs inclusive of the Images, DealerSocket permitted Google to download

27 from DealerSocket's servers, and to reproduce and display publicly the individual

28

3137787

Images from Google's servers, enabling massive and worldwide distribution to every potential infringer.  Accordingly, when DealerSocket requested to download the Images from DealerSocket's servers, DealerSocket distributed copies of the Images to Google.

**Evox Notifies DealerSocket of its Massive Infringement.**

32.    On September 7, 2022, Evox notified DealerSocket of its massive infringement on the Website and attached a spreadsheet of the Website's URLs that corresponded to the copying of each of the 132,923 Images, which spreadsheet included:  (a) the URL of each of the Images as stored on DealerSocket's Server 1 server; (b) the URL of each of the pages of the Website on which the Images were publicly displayed; (c) the filename for each of the Images; and (d) the Image copyright registration number. A copy of that correspondence, together with the spreadsheet of infringements, is attached as **Exhibits E-1** and **E-2**, respectively.

33.    DealerSocket responded on October 7, 2022, falsely claiming that "eCarlist.com is a dead website that has not been active since at least 2014."  It also falsely claimed that the Prior Dealerfire License, obtained by another one of its acquired companies, shielded it from liability.  A copy of that correspondence is attached as **Exhibit F**. Contrary to DealerSocket's arguments, the Prior Dealerfire License defined "Licensee" narrowly, and did not include any affiliated entity. Notwithstanding the fact that the Website was governed by the Prior Dealertrack License, not the Prior Dealerfire License, while the 2014 settlement agreement with Dealerfire did contain a release that could be broadly construed to include Dealerfire's affiliates, that release only related to matters occurring prior to its execution, not ten (10) years later.

**Evox Discovers DealerSocket's Continued Massive Infringement.**

34.    Evox performed another data collection of the Website in early 2024, and discovered that 108,907 of the 132,923 Images that Evox had previously notified DealerSocket about, still remained accessible and publicly displayed on the Website

3137787

through its Server 1.  Evox notified DealerSocket of its continued and willful

infringement on March 4, 2024, as well as refuting all of DealerSocket's false claims

and defenses to its massive infringement.  Evox also attached a copy of a report

completed by its consultants, Hochman Consultants, confirming each of the infringing

uses and that DealerSocket owns and controls the Website.  A copy of that

correspondence, including the report by Hochman Consultants, is attached as **Exhibit

G**.

**The Parties Enter a Tolling Agreement.**

35.    The parties entered a tolling agreement as of March 1, 2024, and later

amended that agreement so that the tolling period is March 1, 2024 through the earlier

of (a) December 2, 2025 or (b) thirty (30) days after the conclusion of a private

mediation to resolve these claims (which the parties agreed had not yet occurred).  A

copy of this tolling agreement and amendment are attached as **Exhibit H**.

**Evox Discovers Even More of DealerSocket's Massive Infringement.**

36.    In May, 2025, Evox became aware that despite receiving a cease-and-

desist notice and entering into a tolling agreement, DealerSocket has and continues to

copy other Images by using the Images in banner advertisements (1) unrelated to the

VIN-Specific Advertising and (2) well after the termination of the prior licenses.

37.    Evox recently discovered that DealerSocket created banner

advertisements using at least 188 unique Images to market and advertise

DealerSocket's clients.  These banner advertisements are still live as of this writing.

For example:

3137787

38.    In June, 2025, Evox performed another data collection of the Website and discovered that DealerSocket had reproduced and continued to publicly display 559,781 Evox Images on a mirror image server (images1.ecarlist.com ("Server 2")). website. A mirror server is an exact copy of an original server, hosted under a different URL to improve accessibility, speed, and availability. These Images include all of the 132,923 Images Evox previously notified DealerSocket about on September 7, 2022 that were stored on and publicly displayed by its Server 1.

39.    What is striking about these additional infringements is that DealerSocket stored and made accessible these Images in the folder "/evox/."  This is the same DealerSocket folder that Evox had previously identified to DealerSocket as storing the unauthorized Images.  Accordingly, despite storing 559,781 Evox Images in the "/evox/" folder, after Evox notified DealerSocket of its copyright infringement, DealerSocket only removed from its website the Images for which Evox previously

provided pinpoint notice of each infringement, not all of the clearly identifiable Evox Images contained in this folder, and only from one of its identical servers.

40.    On June 13, 2025, Evox notified DealerSocket of its additional massive infringement on the Website and attached a spreadsheet of the URLs of each of the Images as stored on DealerSocket's Server 2 server of each of the **559,781** Images. A copy of that correspondence, together with the spreadsheet of infringements, is attached as **Exhibits I-1** and **I-2**, respectively.

## **FIRST CLAIM FOR RELIEF**

### **(Direct Copyright Infringement, 17 U.S.C. §§ 501 et seq.)**

**(Against Defendants and Does 1-4)**

41.    Evox repeats and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

42.    Evox is the sole author and owner of each of the Images.

43.    Each of the Images is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

44.    Defendants have infringed Evox's copyrights in the Images by reproducing them on the Website servers, displaying publicly and distributing them.

45.    Specifically, Defendants had no right to Copy any of the Images in any manner. Nevertheless, without authorization, Defendants Copied each of the Images.

46.    At all times relevant to the Complaint, Defendants were directly or indirectly operating the Website and Copying the Images.

47.    Defendants infringed at least **559,781** of the Images.

48.    The foregoing acts of Defendants constitute direct infringement of Evox's copyrights of the Images, in violation of 17 U.S.C. § 106.

49.    As the result of Defendants' infringing activities, Evox has suffered monetary damages as well as damages to its goodwill and reputation.

50.    Defendants' past and continued Copying of the Images constitutes willful infringement of Evox's rights. Defendants had full knowledge of Evox's

3137787

Glaser
Weil

ownership and copyright in each Images, and that Defendants did not have the right to Copy any of the Images after the expiration of the Prior DealerTrack License. Defendants were therefore aware they were using the Images without Evox's authorization or acted in reckless disregard of Evox's rights in the Images.

51.    Pursuant to 17 U.S.C. § 504(b), Evox is entitled to its actual damages, including Defendants' profits from infringement in connection with the Images, in an amount to be proven at trial.

52.    Alternatively, at Evox's election pursuant to 17 U.S.C. § 504(c), Evox is entitled to recover up to $30,000 in statutory damages for each Image, and/or up to $150,000 in statutory damages for each Image willfully infringed.

53.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Evox great and irreparable injury that cannot fully be compensated or measured in money. Evox has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Evox is entitled to injunctive relief prohibiting Defendants from further infringing Evox's copyrights, ordering the Defendants to impound and destroy all copies of the Images made in violation of Evox's exclusive rights.

54.    Evox is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505 because the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration, and prejudgment and post judgment interest according to law.

## **Prayer for Relief**

Plaintiff Evox prays for relief as follows:

a.    That Defendants and their agents and employees be enjoined from infringing Evox's copyrights in any manner, specifically the Images;

b.    That Evox be awarded its actual damages, including Defendants' profits from infringement in connection with each of the Images, plus any other

3137787

monetary advantage gained by Defendants through their infringement under 17 U.S.C. § 504(b) for each separate infringement;

c.    Alternatively, at its election, that Evox be awarded maximum statutory damages with respect to each Images, or such as other amounts as may be proper under 17 U.S.C. § 504(c), including for willful infringement with respect to the Images;

d.    That Evox be awarded its reasonable attorney's fees and costs in this action, under 17 U.S.C. § 505;

e.    That Evox be awarded pre- and post-judgment interest; and

f.    That Evox be awarded any and all other further legal or equitable relief as the Court deems proper.


DATED: December 10, 2025          GLASER WEIL FINK HOWARD
                                   JORDAN & SHAPIRO LLP


                                  By: /s/ Robert E. Allen
                                  ROBERT E. ALLEN
                                  LAWRENCE M. HADLEY
                                  JASON LINGER

                                  *Attorneys for Plaintiff*
                                  *Evox Productions, LLC*

## **Demand for Jury Trial**

Plaintiff Evox Productions, LLC, demands a jury trial on all issues so triable.


DATED: December 10, 2025          GLASER WEIL FINK HOWARD
                                   JORDAN & SHAPIRO LLP


                                   By: : */s/ Robert E. Allen*
                                       ROBERT E. ALLEN
                                       LAWRENCE M. HADLEY
                                       JASON LINGER

                                       *Attorneys for Plaintiff*
                                       *Evox Productions, LLC*

3137787